# Supreme Court of Texas

---

No. 20-0117

---

Robert W. Van Boven M.D., D.D.S.,

*Petitioner*,

v.

Scott Freshour, Margaret McNeese, Chris Palazola, Amy
Swanholm, Timothy Webb, and Sherif Zaafran, M.D., in their
Official Capacities as Officers of the Texas Medical Board,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Third District of Texas

---

JUSTICE BOYD, dissenting.

The only issue this case presents is whether the Texas Medical
Board members acted ultra vires by filing a Revision-to-Action Report
instead of a Void Report with the National Practitioner Data Bank.
Because they did not, I must respectfully dissent.

The Court holds that the Board acted ultra vires by filing the
Revision-to-Action report. *Ante* at __. But the Court does not specify a
single law with which the Board's action conflicted or without reference
to which the Board acted. *See Honors Acad., Inc. v. Tex. Educ. Agency*,

555 S.W.3d 54, 68 (Tex. 2018) (stating a governmental official acts ultra vires when "the conduct conflicts with the law itself"); *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) (when "his acts conflict with the law itself"), 163 (when he acts "without reference to . . . the law authorizing the official to act"). The best the Court can do is assert that the Board violated section 164.060(b)(4) of the Texas Occupations Code. *Ante* at ___ n.41. But that section merely required the Board to report its disciplinary actions to the Secretary's designee. TEX. OCC. CODE § 164.060(b)(4). No one disputes that the Board reported its disciplinary actions against Dr. Robert Van Boven to the Secretary's designee. The dispute is over whether it did so correctly.

The Board's rules required it to report the information "according to applicable federal rules and statutes." 22 TEX. ADMIN. CODE § 187.5. Federal law required the Board to report "any *revision* of [an] action originally reported," including but "not limited to, reversal of a professional review action or reinstatement of a license." 45 C.F.R. 60.6(b) (emphasis added). The federal regulations also required each report to be classified "in accordance with a reporting code adopted by the Secretary." *Id.* § 60.8(b)(12).[1] Based on this direction, as well as the

---

[1] The Secretary adopted and published a comprehensive coding system that includes 317 codes for adverse-action classifications. *See* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, HEALTH RESOURCES AND SERVICES ADMINISTRATION, & BUREAU OF HEALTH WORKFORCE, NATIONAL PRACTITIONER DATA BANK (NPDB) CODE LISTS (2021) [hereinafter CODE LISTS], available at https://www.npdb.hrsa.gov/software/CodeLists.pdf. The Board filed its Revision-to-Action report with the Revision-to-Action Code "License Restored or Reinstated, Complete (1280)." *See id.* at 7.

"very detailed guidance" in the Data Bank's Guidebook,[2] *ante* at __, the Board determined that its final order revised the initial adverse action and therefore determined that federal law required it to file a Revision-to-Action report. Although the Court disagrees with that decision, it cannot identify any state or federal law the decision violated. The Board's filing of a Revision-to-Action report therefore cannot be an ultra vires action.

## I.
## Data Bank Reports

Texas and federal law require the Board to report its disciplinary actions against physicians to the Data Bank, 42 U.S.C. §§ 11101, 11132, 11134; 45 C.F.R. §§ 60.1, .8; TEX. OCC. CODE § 164.060(b)(4), and to do so "according to applicable federal rules and statutes," 22 TEX. ADMIN. CODE § 187.5. The Data Bank requires those reports to be submitted in one of six formats: (1) an "Initial Report," (2) a "Correction Report," (3) a "Void Report," (4) a "Revision-to-Action Report," (5) a "Correction of

---

[2] The 2015 edition of the Guidebook was in use at the time of the events in this case. *See* U.S. Department of Health and Human Services, Health Resources and Services Administration, & Bureau of Health Workforce, NPDB Guidebook (2015) [hereinafter 2015 GUIDEBOOK], available at https://www.npdb.hrsa.gov/resources/2015NPDBGuidebook.pdf. A newer version, updated in 2018, is available on the Data Bank website. *See* U.S. Department of Health and Human Services, Health Resources and Services Administration, & Bureau of Health Workforce, NPDB Guidebook (2018), available at https://www.npdb.hrsa.gov/resources/NPDBGuidebook.pdf. The Guidebook is intended to be a "policy manual." 2015 GUIDEBOOK at A-1.

Revision to Action" Report, and (6) a "Notice of Appeal." 2015 GUIDEBOOK at E-7 to E-10; CODE LISTS at 52.[3]

The Medical Board first submitted an Initial Report to the Data Bank after a three-person disciplinary panel conducted an expedited hearing, found based on evidence that allowing Dr. Van Boven to continue his usual practice while the Board investigated and resolved complaints filed against him would present a "continuing threat to the public welfare," and entered an order temporarily restricting his medical license. *See* TEX. OCC. CODE § 164.059(b); 22 TEX. ADMIN. CODE §§ 187.57, .61.[4] The Initial Report described the allegations made against Van Boven, the disciplinary panel's finding, and the temporary restriction placed on his medical license. The Board's report noted that the restriction was of "indefinite" duration. Although Van Boven contends that the Board should not have temporarily restricted his license, no one disputes that, having done so, the Board properly

---

[3] "Notice of Appeal" Reports are notifications to the Data Bank "that a subject has formally appealed a previously reported adverse action." CODE LISTS at 52. Certain reporting entities "must submit a Notice of Appeal whenever a previously reported adverse action is on appeal," *id.*; *see* 45 C.F.R. § 60.6(b), including "[a]ny adverse action taken by the licensing or certification authority of the state as a result of a formal proceeding," 45 C.F.R. § 60.9(a)(1). Temporary suspension and restriction proceedings before the Board are not "formal proceedings." *See* 22 TEX. ADMIN. CODE § 187.61 (noting that a temporary restriction proceeding is an "ancillary proceeding" that occurs prior to filing a formal complaint to begin formal proceedings).

[4] "'Continuing threat to the public welfare' means a real danger to the health of a physician's patients or to the public from the acts or omissions of the physician caused through the physician's lack of competence, impaired status, or failure to care adequately for the physician's patients . . . ." TEX. OCC. CODE § 151.002(a)(2).

4

reported that action by filing its Initial Report in accordance with federal and state law.

After investigating the complaints, the Board's staff decided to pursue a formal disciplinary action against Van Boven before the State Office of Administrative Hearings. After an evidentiary hearing, however, the administrative law judge issued a proposed decision concluding that the Board staff "failed to prove, by a preponderance of the evidence, that Dr. Van Boven is subject to sanction" for committing "unprofessional or dishonorable conduct that is likely to deceive or defraud the public." TEX. OCC. CODE § 164.052(a)(5).[5] The Board accepted the administrative law judge's findings and conclusions, *see id.* § 164.007(a), and issued a final order dismissing the complaints.

The Board then submitted a Revision-to-Action Report to the Data Bank, explaining that, based on the administrative law judge's findings, the Board had "restored or reinstated" Van Boven's license and "entered a final order dismissing the Board staff's complaint," that the matter was "complete," and that the final order "supersedes all previous orders."

Van Boven filed this suit arguing that the "submission of a Revision to Action Report was a ultra vires act" and that the Board had a "ministerial" duty to submit a Void Report to the Data Bank. A "Void Report" withdraws a previously submitted report "in its entirety," so that the previous report is "removed" from the physician's "disclosable

---

[5] "[U]nprofessional or dishonorable conduct likely to deceive or defraud the public includes conduct in which a physician [] commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine." TEX. OCC. CODE § 164.053(a)(1).

5

record." 2015 GUIDEBOOK at E-8. According to the Data Bank's Guidebook, a Void Report should be filed when the previously reported adverse action "was *overturned on appeal*." *Id.* (emphasis added).[6] As an example, the Guidebook explains that if a state medical-licensing agency revokes a physician's license and submits an Initial Report on that action, but the revocation is later "overturned by a State court," the medical board "must void the Initial Report." *Id.*

By contrast, a "Revision-to-Action Report" describes a new action that modifies a previously reported action, so that instead of replacing or withdrawing the initial report, "[b]oth reports become part of the disclosable record." *Id.* at E-8 to E-9; *see id.* at E-15 ("A Revision-to-Action Report is used to submit an action that relates to and/or modifies an adverse action previously reported to the [Data Bank]."). According to the Guidebook, a Revision-to-Action Report should be filed when the reporting agency (1) imposes "additional sanctions" on the physician based on the "previously reported incident," (2) extends or reduces the length of the previously reported adverse action, (3) reinstates the physician's license, or (4) when "the original suspension or probationary

---

[6] The Guidebook also states that a Void Report is appropriate when the Initial Report "was submitted in error" or the previously reported adverse action "was not reportable because it did not meet [the Data Bank's] reporting requirements." 2015 GUIDEBOOK at E-8. Van Boven does not rely on either of these reasons. The Code Lists include only three codes for void reports, aligning with the three reasons for Void Reports described in the Guidebook: V0, when "[t]he report was submitted in error," V1, when "[t]he action was not reportable because it did not meet NPDB reporting requirements," and V2, when "[t]he action was overturned on appeal" or "the action was reversed because the original action should never have been taken." CODE LISTS at 53.

6

period has ended." *Id.* at E-9.[7] As examples, the Guidebook explains that if a state licensing agency reports that it has suspended a physician's license for an indefinite period, it must file a Revision-to-Action Report when it reinstates the license. *Id.* at E-15.

In summary—and as the Data Bank explained in letters it sent to Van Boven rejecting his complaints—a Void Report "is appropriate when an action is overturned or vacated, not when an action is modified or superseded." *See, e.g.*, *id.* at E-67 (explaining that if a state licensing agency files an Initial Report that it has revoked a physician's license and a court on appeal modifies the discipline to probation, the agency should file a Revision-to-Action Report; but if the court overturns the agency's order, the agency should file a Void Report). Because the Board's final order stated that Van Boven's license was "no longer restricted," the Data Bank concluded that the Board intended to "modify" the initial temporary-restriction order by ending and removing the restriction, thus "updating the initial action," not to "overturn or vacate the Initial Order and restriction all together." Based on this understanding, the Data Bank concluded that the Board was "legally required" to file the Revision-to-Action Report.

As the Court explains, whether Van Boven is correct that the federal regulations and Guidebook required the Board to file a Void Report depends on the nature of the Board's final order and its effect on

---

[7] *See also* 45 C.F.R. § 60.6(b) (requiring reporting agencies to "report any revision of the action originally reported" and explaining that "[r]evisions include . . . reinstatement of a license"); CODE LISTS at 7 (providing the "Revision to Action" code for "License Restored or Reinstated, Complete," used by the Board in its Revision-to-Action Report).

7

the previous temporary-restriction order under Texas law. Specifically, the question is whether the final order "modified or superseded" the temporary order (in which case the Board properly filed a Revision-to-Action Report) or "overturned or vacated" the temporary order (in which case the Board should have filed a Void Order). Texas law confirms that the final order, although related to the temporary-restriction order, is the result of a separate proceeding that did not "overturn" the initial order. Instead, it "modified" the order by bringing the temporary restriction to an end.

## A. Disciplinary proceedings under Texas law

The Texas Medical Practice Act authorizes—and indeed, requires—the Board to impose disciplinary sanctions against licensed physicians who violate the Act or a Board rule, engage in other prohibited conduct, or who "pose[] a continuing threat to the public welfare." TEX. OCC. CODE §§ 164.001(a)–(c), .051–.058. To impose such sanctions, the Board must initiate a disciplinary proceeding that involves a two-step process. First, the Board must conduct "an Informal Show Compliance proceeding and settlement conference" (an ISC) with the physician and attempt to resolve the complaint informally. 22 TEX. ADMIN. CODE § 187.2(21); *see* TEX. OCC. CODE §§ 164.003–.004. If that effort is unsuccessful, the Board must then file a formal complaint with the State Office of Administrative Hearings for formal resolution as a contested case under the Administrative Procedures Act. TEX. OCC. CODE §§ 164.005–.006. After the administrative law judge conducts a formal hearing and issues findings of fact and conclusions of law regarding the complaint, the Board cannot change those findings and

8

conclusions but instead must either enter a final order based on those findings and conclusions or appeal the findings and conclusions by filing a suit for judicial review in a Travis County district court. *Id.* §§ 164.007–.0072. If the Board enters a final order imposing a disciplinary sanction, the physician may appeal that order by filing suit in the district court. *Id.* § 164.009.

But also within this statutory scheme, section 164.059 authorizes the Board to *temporarily* suspend or restrict a physician's license on an expedited basis pending the investigation, filing, and two-step proceeding to resolve a formal complaint. To temporarily suspend or restrict a license, a disciplinary panel consisting of three Board members must determine based on evidence that the physician's "continuation in practice" would "constitute a continuing threat to the public welfare." *Id.* § 164.059(a)–(b); *see also* 22 TEX. ADMIN. CODE §§ 187.55–.62. If the panel imposes a temporary suspension or restriction, it must then initiate the two-step disciplinary proceeding by conducting an ISC and, if that is unsuccessful, filing a formal complaint with the State Office of Administrative Hearings, "as soon as practicable." TEX. OCC. CODE § 164.059(e)–(f); *see Tex. Med. Bd. v. Wiseman*, No. 03-13-00210-CV, 2015 WL 410330, at *2 (Tex. App.—Austin Jan. 30, 2015, pet. denied) (mem. op.) (describing process for the Board's temporary suspensions and restrictions).

The Medical Practice Act and the Board's rules make clear that a temporary-suspension-or-restriction proceeding and a two-step disciplinary proceeding are two separate, although related, proceedings. "A temporary suspension or restriction proceeding is ancillary to a

9

disciplinary proceeding concerning the licensee's alleged violation(s) of the Act." 22 TEX. ADMIN. CODE § 187.61(a). An order temporarily suspending or restricting a physician's license "is effective immediately on the date entered and shall remain in effect until a final or further order of the board is entered in *the disciplinary proceeding*." *Id.* § 187.61(b) (emphasis added).[8] The result of these two ancillary processes is that a physician's license may be suspended or restricted while the formal proceedings progress. But as discussed below, the two-step disciplinary proceeding does not evaluate the merits of the temporary-restriction order.

---

[8] We have not previously addressed whether or when a physician may appeal from a temporary-suspension-or-restriction order. The Court states that the "statutory and regulatory provisions specifically applicable to physician discipline do not provide for an administrative appeal from a disciplinary panel order." *Ante* at __. And it "express[es] no view on whether judicial review is available." *Id.* at __ n.14.

A temporary-suspension-or-restriction order qualifies as a "disciplinary action," *see* TEX. OCC. CODE §§ 164.001, .004, .051, .060, and any person whose license is "subject to . . . disciplinary action by the board may appeal to a Travis County district court not later than the 30th day after the date the board decision *is final*," *id.* § 164.009 (emphasis added). If a temporary-suspension-or-restriction order is a "final" order, the physician may appeal that order directly, immediately after the disciplinary panel enters it. Historically, the Medical Board's temporary-restriction orders have explicitly stated that they were "final" orders. *See, e.g.*, *Wiseman*, 2015 WL 410330, at *3 n.8. The Third Court of Appeals, however, has held that a temporary-restriction order is not a "final" order, so a physician who desires to appeal a temporary-restriction order may do so only after the Board completes the two-step disciplinary proceeding and enters a final order. *Id.* at *3. In either event, it appears that physicians can appeal a temporary-restriction order, either as soon as it is entered or after a final order is entered. The parties here, however, have not briefed the issue of when a physician may appeal a temporary-restriction order.

10

## B. "Overturned" or "modified"

The question here is whether, under this Texas regulatory scheme, the Board's final order dismissing the formal complaints against Van Boven for lack of evidence of a sanctionable violation "overturned" the temporary-restriction order "on appeal" (and thus required the Board to file a Void Report) or "modified" the temporary-restriction order (and thus required the Board to file a Revision-to-Action Report).[9] I conclude that the Board's final order did not "overturn" the temporary-restriction order "on appeal." Instead, like a court's final judgment's effect on a temporary-injunction order, the Board's final order "superseded" the temporary-restriction order, "reinstated" Van Boven's license, and thereby "modified" the temporary restriction by ending it. As a result, the Guidebook required the Board to file a Revision-to-Action Report with the Data Bank.

---

[9] The Board argues that a Void Report would have been improper here because only *a court* can "overturn" a Board order "on appeal." Although the Board concedes that the Guidebook does not say that a Void Report is required when a previous order is "overturned [*by a court*] on appeal," it notes that the examples the Guidebook provides involve a court overturning an agency's order. *See, e.g.*, 2015 GUIDEBOOK at E-8 (providing example of when a board order revoking a license is "overturned by a state court"), E-72 ("If a court overturns a board's order, the board should void the Initial Report."). But as Van Boven insists, the Guidebook provides these examples merely as non-exclusive examples—they do not independently alter or limit the meaning of the phrase "overturned on appeal." Like the Court, *see ante* at ___, I read the Guidebook to require a Void Report whenever a prior order is "overturned on appeal," regardless of whether that appeal occurs in a court, before the Board, or to an administrative law judge. *Cf.* CODE LISTS at 52 (noting only "formal[]" appeals require Notice of Appeal Reports).

### 1. No "appeal"

Despite Van Boven's insistence otherwise, he did not appeal the Board's temporary-restriction order. He argues that he "appealed" the order by continually denying the allegations asserted against him and refusing to agree to resolve the matter through an informal settlement conference, thereby forcing the Board to file a formal complaint in the State Office of Administrative Hearings. I disagree. After the Board panel entered the temporary-restriction order, the Act required *the Board* to pursue the two-step disciplinary proceeding; it did not provide the disciplinary proceeding as a means for Van Boven to "appeal" the results of the ancillary temporary-restriction proceeding. *See* TEX. OCC. CODE § 164.059(e)–(f). To "appeal" a Board order, the physician must file suit in the Travis County district court. *Id.* § 164.009. The Board's final order could not have overturned the temporary-restriction order "on appeal" because Van Boven never appealed that order.

### 2. Not "overturned"

Nor did the Board's final order "overturn" the temporary-restriction order. To enter the temporary order, the Board's disciplinary panel had to find, based on evidence, that Van Boven's continued, unrestricted practice of medicine *at that time* (pending an investigation and completion of the two-step disciplinary proceeding) would "constitute a continuing threat to the public welfare." *Id.* § 164.059(a)–(b); *see also* 22 TEX. ADMIN. CODE §§ 187.55–.62. By contrast, the issue in the ensuing contested case before the administrative law judge was whether Van Boven should be sanctioned for engaging in "unprofessional or dishonorable conduct that is likely to deceive or

12

defraud the public." TEX. OCC. CODE §§ 164.052(a)(5). The administrative law judge was not called upon to decide, nor did he decide, whether the three-member Board panel should (or should not) have entered the temporary-restriction order or whether Van Boven's continued practice *at that time* (pending investigation and resolution of the formal complaint) would constitute a "threat to public welfare." Indeed, unlike proceedings against certain other licensed professionals,[10] the Act does not grant the State Office of Administrative Hearings any authority to review, reverse, or affirm a Board panel's temporary-suspension-or-restriction order against a physician or its finding that the physician's practice would constitute a "continuing threat to the public welfare." A temporary-restriction order based on the three-member panel's finding remains in effect only until the Board enters a subsequent or final order, 22 TEX. ADMIN. CODE § 187.61(b), but the final order does not reverse or overturn the temporary order.

Van Boven contends that the final order "overturned" the temporary-restriction order because the hearing before the administrative law judge was a "trial de novo on all facts and law related to the allegations considered in the temporary order." But in fact, the hearing before the administrative law judge involved evidence of facts that differed from the facts presented to the Board's disciplinary panel that issued the temporary-restriction order, including—for example— evidence regarding allegations of a third patient who provided no

---

[10] *See, e.g.*, TEX. OCC. CODE §§ 263.004(c) (authorizing State Office of Administrative Hearings to conduct hearing to review Board of Dental Examiners temporary-suspension order against dentist), 301.455(c) (same for Board of Nursing's temporary-suspension-or-restriction order against nurse).

evidence to the disciplinary panel that entered the temporary-restriction order. And more importantly, any evidence presented to the administrative law judge was used to determine whether Van Boven could or should be sanctioned for *previously* engaging in unprofessional or dishonorable conduct, not to determine whether his license should be temporarily restricted to eliminate or reduce a *future* threat to the public welfare. The administrative law judge made no determination, and the final order did not conclude, that the temporary restriction "should never have been taken." CODE LISTS at 53 (defining when to file a Void Report).

### 3. "Superseded"

Nevertheless, Van Boven argues that the Board was required to file a Void Report because its final order "superseded," and therefore "vacated" and "voided" the temporary-restriction order. As mentioned, the Board disciplinary panel's temporary-restriction order provided that it would "remain in effect until it is *superseded* by a subsequent Order of the Board," the Board's final order provided that it "*supersedes* the Order of Temporary Restriction," and the Board's Revision-to-Action Report to the Data Bank explained that the final order "*supersedes* all previous orders." The Board's final order based on an administrative law judge's factual findings and legal conclusions following a disciplinary proceeding does not make a prior temporary-suspension-or-restriction order "void" in the sense that it becomes an "absolute nullity" that was "[n]ull from the beginning." *Void*, BLACK'S LAW DICTIONARY (11th ed. 2019). Instead, it "supersedes" the prior order by "repealing" and "taking the place of" it. *Supersede*, BLACK'S LAW DICTIONARY (11th ed. 2019).

14

In this sense, the three-member panel's temporary-restriction order and the full Board's final order are analogous to a temporary-injunction order and a final judgment in a court case. When a party seeks a temporary injunction, it must prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)). When a court enters a temporary-injunction order and then later enters a final judgment from which a party appeals, the appellate court does not evaluate the propriety of the temporary-injunction order. *See Isuani v. Manske-Sheffield Radiology Grp., P.A.*, 802 S.W.2d 235, 236 (Tex. 1991) (per curiam). In fact, the court cannot review the propriety of the temporary injunction because those questions are moot, both procedurally and substantively. *See Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 635 (Tex. 2021) ("Once the trial court entered a permanent injunction . . . , the issue of whether the trial court erred by granting a temporary injunction . . . no longer presented a live controversy that was relevant to the resolution of the parties' then-current dispute.").

In the same way, when the Medical Board enters a final order (regardless of whether that order imposes a disciplinary sanction based on the administrative law judge's finding of sanctionable conduct or, as here, imposes no sanction and dismisses the complaint based on the administrative law judge's failure to find sanctionable conduct), a

15

temporary-restriction order no longer has any effect at all. *See* 22 TEX. ADMIN. CODE § 187.61(b). But the final order does not overturn the temporary order or render it void from its inception.

The three-member panel was required to decide whether Van Boven's continued practice of medicine pending completion of the investigation and the two-step disciplinary process "would" in the future constitute a "threat" to the public, not whether in hindsight it actually "did" cause "harm" to the public. TEX. OCC. CODE § 164.059. The panel made a prediction, based on the evidence before it, that the temporary restriction was necessary to protect the public welfare. There is little difference between that determination and a trial court's determination that a temporary injunction is necessary to enforce a party's "*probable* right" and prevent a "*probable* injury." *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) (emphases added). And there is little difference between the administrative law judge reviewing the evidence in this case and determining that the Board has not proven its allegations and a trial court ultimately denying final relief in a case in which it previously entered a temporary injunction. In both situations, the final order does not void or even review the merits of the order granting temporary relief. *See Int'l Ass'n of Machinists, Local Union No. 1488 v. Federated Ass'n of Accessory Workers*, 130 S.W.2d 282, 283 (Tex. Comm'n App. 1939) ("[T]he effect of the order of the trial court dismissing the main case was to terminate such injunction. . . . No temporary injunction exists, and it follows that the question of whether it was rightfully issued is but an abstract question of law with which this court will not deal."). As the Final Order here states: "This Order

16

supersedes the Order of Temporary Restriction issued on February 29, 2016 and Respondent's license to practice medicine in Texas is *no longer restricted*." [Emphasis added.] Not, as the Court reads it, "*should not have been restricted*."

When in this case the administrative law judge issued his Proposal for Decision, and when the Board accepted and incorporated that proposal into its Final Order, they did not consider the merits of the temporary-restriction order. Unlike the three-member Board panel that entered the temporary-restriction order, they did not consider whether Van Boven's "continuation in practice" *at that time* (pending the investigation and the two-step disciplinary proceeding) would "constitute a continuing threat to the public welfare." TEX. OCC. CODE § 164.059(a)–(b); 22 TEX. ADMIN. CODE §§ 187.55–.62. Instead, they were concerned only with whether the Board met its burden to prove, by a preponderance of the evidence, that Van Boven should be sanctioned for committing "unprofessional or dishonorable conduct that is likely to deceive or defraud the public." *See* TEX. OCC. CODE § 164.052(a)(5).

The Court hangs its contrary conclusion on one hook: that much of the same evidence that was presented at the temporary-restriction hearing (specifically, "the allegations made by Patients A and B") was also presented at the formal hearing before the administrative law judge. But the evidence was submitted at the temporary-restriction hearing to prove an entirely different claim—that Van Boven's continued, unrestricted practice of medicine pending completion of the investigation and the two-step proceeding would "constitute a

17

continuing threat to the public welfare." TEX. OCC. CODE § 164.059(b); 22 TEX. ADMIN. CODE §§ 187.55–.62.

The Court ends its opinion by asserting that "the nature of the Final Order under Texas law was to determine that no basis *for the Temporary Order* had been proved." *Ante* at ___ (emphasis added).[11] But the final order made no determination at all regarding the propriety of the temporary-restriction order or whether that sanction had "been proved." Simply because the Board ultimately failed to prove the allegations against Van Boven does not mean that the temporary-restriction order "never should have been" issued.[12]

As the Court itself ultimately concedes, "the Temporary Order was not under review in the SOAH proceedings," and the administrative law judge "had no authority to overturn or vacate it." *Ante* at __. Yet—struggling to find a way to construe the laws that govern Board proceedings to render a result it considers more just and fair—the Court concludes that although "the Temporary Order was not overturned or vacated," the "Final Order's *effect* was the same." *Ante* at __ (emphasis

---

[11] Similarly, the Court suggests "that Board staff failed to prove any of their allegations." *Ante* at __. But the administrative law judge never found that the Board failed to prove the basis for the temporary restriction on Van Boven's license. And the Court claims that the administrative law judge made "findings or conclusions regarding the Temporary Order." *Ante* at __. Yet, despite the fact that the administrative law judge's fifty-nine findings and five conclusions are enumerated in eight pages, the Court does not and cannot point to a single finding or conclusion that addresses the propriety of the temporary-restriction order.

[12] Even an expungement is not a reason to submit a Void Report. GUIDEBOOK at E-70 ("An expungement removes the practitioner's public record but does not vacate or change the action. . . . An expunged record is not a reason to void a report.").

18

added). But under the law, that's simply not correct. The fact that the patients' testimony was insufficient to support sanctions against Van Boven based on a finding that he had committed "unprofessional or dishonorable conduct that is likely to deceive or defraud the public," TEX. OCC. CODE § 164.052(a)(5), does not (effectively or otherwise) mean that their testimony was insufficient to support a temporary restriction based on a finding that, at that time, his unrestricted practice of medicine pending an investigation and final determination would "constitute a continuing threat to the public welfare," *id.* § 164.059(b). The Board's ultimate determination that Van Boven was not "subject to sanction" did not—either expressly or by its "effect"—overturn or vacate the three-member panel's earlier determination that his license should be temporarily restricted until the Board could make its ultimate determination.

The Data Bank's Guidebook specifically confirms this result, explaining that when a state licensing agency orders a "summary or emergency suspension of a license . . . pending completion of [the agency's] investigation," the agency "must submit a Revision-to-Action Report" once "a final action is taken that *supersedes* or modifies the initial action." 2015 GUIDEBOOK at E-61 (emphasis added). And the Guidebook provides additional examples that confirm this result as well. When, for example, a licensing agency reports that it has suspended a license in an order that does not provide for automatic reinstatement "after a specified period," the agency "must submit a Revision-to-Action report when the license is reinstated." *Id.* at E-15; *see also* 45 C.F.R. § 60.6(b) (explaining that "revisions" include "reinstatement of a

license"); 2015 GUIDEBOOK at E-8 (stating that a Revision-to-Action Report should be filed when the final order reduces the length of the previously reported adverse action or reinstates the physician's license, or when "the original suspension or probationary period has ended"), E-58 (providing that licensing authorities "also must report any revisions to a previously reported licensing or certification action, such as a reinstatement of a suspended license"). Because the Board's final order in this case replaced the temporary-restriction order, modified the previously indefinite temporary restriction on Van Boven's license, and reinstated his license without restrictions, but did not render the prior order void from its inception, the Guidebook required the Board to file a Revision-to-Action Report.

Van Boven contends, however, that these Guidebook examples refer only to situations in which the licensing agency, having initially suspended or restricted a license for an indefinite period, later enters an order that imposes an *adverse* action on the licensee. According to Van Boven, when an agency that initially suspends or restricts a license later takes a final adverse action against the licensee, the Guidebook requires the agency to file a Revision-to-Action Report; but when (as here) the agency later takes a final action that is not adverse, the Guidebook requires the agency to file a Void Report. But the Guidebook's examples refer only to a "final action," never referring to whether the final action is "adverse." *See* 2015 GUIDEBOOK at E-61 (requiring agency to submit a Revision-to-Action Report when "a final action is taken that supersedes or modifies the initial action"). And the regulations and Guidebook specifically include situations in which the agency does not take an

20

adverse final action, but instead "reinstates" the previously suspended license or when the suspension period "has ended," neither of which constitutes an "adverse" action. *See* 45 C.F.R. § 60.6(b); 2015 GUIDEBOOK at E-8, E-15, E-58; CODE LISTS at 7 (including "License Restored or Reinstated" in list of Revision-to-Action codes).

### 4. "Modified"

Van Boven argues that the Guidebook did not require a Revision-to-Action Report in his case because the Board's final order could not have "modified" the temporary restriction. Specifically, Van Boven contends that because the temporary-restriction order "ceased to have any legal effect" once the Board entered the final order, the final order "supplanted" the temporary-restriction order but could not "modify" it because there was no longer any temporary-restriction order to modify.

Although Van Boven is correct that the temporary order lost all effect when the Board entered the final order, the Guidebook requires a Revision-to-Action Report when a final order modifies a prior *action*, not a prior *order*. See 2015 GUIDEBOOK at E-8 ("A Revision-to-Action Report is a report of an action that modifies an adverse *action* previously reported to the [Data Bank]." (emphasis added)), E-15 ("A Revision-to-Action Report is used to submit an action that relates to and/or modifies an adverse *action* previously reported to the [Data Bank]." (emphasis added)), E-61 ("Once a final action is taken that supersedes or modifies the initial *action*, the State licensing or certification authority must submit a Revision-to-Action Report." (emphasis added)), E-67 (requiring Revision-to-Action Report when "a judicial appeal resulted in the court modifying the *discipline*" (emphasis added)). Although the final order

21

rendered the temporary *order* ineffective, it also modified the adverse *action* the temporary order imposed by ending the adverse action altogether. *See id.* at E-9.

Because the Board's final order in this case replaced the temporary-restriction order, modified the previously indefinite temporary restriction on Van Boven's license, and reinstated his license without restrictions, but did not render the prior order void from its inception, the Board was required to file a Revision-to-Action Report.

## II.
## Conclusion

I do not begrudge the Court's desire to rectify what Van Boven argues is an unfair, unjust, and unduly prejudicial result. But this Court's task is simply to determine whether the Board defendants acted ultra vires by filing a Revision-to-Action Report, rather than a Void Report, after the Board entered its Final Order in Van Boven's case. For the reasons I have explained, I conclude they did not. I agree with the court of appeals' conclusion that Van Boven failed to plead and establish that the Board acted ultra vires by failing to file a Void Report. I would affirm the court of appeals' judgment dismissing Van Boven's claims as barred by sovereign immunity. Because the Court does not, I must dissent.

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** June 3, 2022

22